## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**TIFFANY WARNER**                              **CASE NO.  6:21-CV-02323**

**VERSUS**                                      **JUDGE ROBERT R. SUMMERHAYS**

**VERMILION PARISH RABIES & ANIMAL ET AL**      **MAGISTRATE JUDGE CAROL B. WHITEHURST**

### REPORT AND RECOMMENDATION

Before the Court are the following motions to dismiss by the multiple defendants:

- Motion to Dismiss pursuant to Rule 12(b)(6) by State of Louisiana (Rec. Doc. 54); Plaintiff opposed (Rec. Doc. 77); and Louisiana replied (Rec. Doc. 87).

- Motion to Dismiss pursuant to Rule 12(b)(6) by City of Abbeville, Mayor Mark Piazza, and the Abbeville City Council (collectively "the Abbeville Defendants") (Rec. Doc. 61); Plaintiff opposed (Rec. Doc. 80); and the Abbeville Defendants replied (Rec. Doc. 85).

- Motion to Dismiss pursuant to Rule 12(b)(6) by Vermilion Parish Sheriff Michael Couvillon (Rec. Doc. 75); Plaintiff opposed (Rec. Doc. 88).

- Motion to Dismiss Penalty, Punitive, or Exemplary Damages by Deborah Garrot, Tristan Bodin, Chase Landry, and the Vermilion Parish Police Jury (erroneously sued as "Vermilion Parish Animal and Rabies Control") (collectively referred to herein as "the Vermilion Defendants") (Rec. Doc. 89); Plaintiff opposed (Rec. Doc. 95).

- Motion to Strike and Motion to Dismiss pursuant to Rule 129(b)(6) by the Vermilion Defendants (Rec. Doc. 91); Plaintiff opposed (Rec. Doc. 96); and the Vermilion Defendants replied (Rec. Doc. 100).

The Motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Because the facts and legal analysis substantially overlaps for these motions, the Court issues this Report and Recommendation addressing all motions. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that all Defendants' motions be granted and that Plaintiff's claims be dismissed.

## Factual Background

Plaintiff initially filed suit *pro se* against several defendants after her dogs were allegedly seized and she was charged with cruelty to animals. (Rec. Doc. 1). Later represented by counsel, she filed a Supplemental and Amended Complaint[1] in which she alleged that on or before August 4, 2020, Defendant Deborah Garrot, alleged supervisor of Vermilion Parish Rabies Animal Control ("VPRAC"), submitted a complaint that several dogs on the property of Plaintiff's deceased father were abandoned. Defendant Garrot allegedly instructed Animal Control Warden Tristan Bodin to seize the dogs, despite Plaintiff's telephone conversation with

---

[1]    The Court shall refer to the Supplemental and Amended Complaint as "the Complaint" unless otherwise specified.

Vermilion Parish Sheriff Deputy Hargrave, who was at the scene, in which Plaintiff explained that she was caring for the dogs. According to the Complaint, Defendant Garrot nonetheless instructed that the dogs be seized and brought to a vet for checkup. Thereafter, Plaintiff alleges Defendant Garrot submitted a report and request for restitution based on seizure of the dogs to Lt. Laporte, apparently with the Vermilion Parish Sheriff's Office ("VPSO"). (Rec. Doc. 27, ¶17-78). Plaintiff was later charged with eight counts of animal cruelty, but those charges were dismissed. (Rec. Doc. 27, ¶109; 142-43).

Plaintiff attached the following documents to her Complaint: a Wikipedia printout regarding Vermilion Parish (Rec. Doc. 27-1); a printout from the Vermilion Parish Police Jury website regarding "Animal (Rabies) Control" (Rec. Doc. 27-2); Plaintiff's counsel's public records request to the Louisiana Governor and U.S. Attorney General's Office seeking several treaties pertinent to Louisiana history and "corporate documents" of various Louisiana cities, and the U.S. Department of Justice's response thereto (Rec. Doc. 27-3); a printout listing various Abbeville ordinances (Rec. Doc. 27-4); and City of Abbeville Committee Meeting minutes from August 18, 2020 that modifies the rabies ordinance and includes a lengthy debate on feral cats (Rec. Doc. 27-5).

Plaintiff sued Deborah Garrot, Tristan Bodin, Chase Landry (who Plaintiff alleged assisted Tristan Bodin in seizing the dogs), the Vermilion Parish Police Jury

3

(erroneously sued as "Vermilion Parish Animal and Rabies Control"), the "alleged City of Abbeville," its mayor and city council, and the "alleged State of Louisiana." Plaintiff also identified Vermilion Parish Sheriff Michael Couvillon in her pleadings, but she did not explicitly identify Sheriff Couvillon as a party. (See Rec. Doc. 27, p. 1-3). Although Plaintiff also sued the City of Kaplan, the Court has dismissed her claims against that defendant. (Rec. Doc. 33; 50).

Plaintiff first asserts bizarre claims that this Court lacks jurisdiction over her, because Louisiana is not actually a state and Abbeville is not actually a municipality. (Rec. Doc. 80-95). She further asserts violations of 28 U.S.C. § 1981 on the grounds that the unlawful seizure of the dogs violated her right to sell the dogs (Rec. Doc. 27, ¶96-101); § 1983 claims for unlawful search and seizure of the dogs in violation of the Fourth and Fourteenth Amendments (Rec. Doc. 27, ¶103-109); supervisor liability claims against Defendant Garrot (Rec. Doc. 27, ¶111-125); municipal liability claims against Vermilion Parish and the city of Abbeville (Rec. Doc. 27, ¶126-39); and claims for malicious prosecution (Rec. Doc. 27, ¶140-152). Peppered throughout the Complaint are racial discrimination-type buzzwords, such as describing each party as European/White or Black and describing purported events during an Abbeville council meeting about cats in which a third party was allegedly given a list that restricted Black people from living in her neighborhood. (See e.g. Rec. Doc. 27, ¶1-6; 135-39).

4

All Defendants seek dismissal of Plaintiff's claims pursuant to F.R.C.P. Rule 12(b)(6). In support of their motions, the Vermilion Defendants attached the VPRAC August 20, 2020 investigative file and incident report (Rec. Doc. 91-3 and 91-4), as well as the Bill of Information charging Plaintiff with eight counts of Simple Cruelty to Animals-Misdemeanor (Rec. Doc. 91-5). Ordinarily, in ruling on a Rule 12(b)(6) motion, the Court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The Court is also permitted to take judicial notice of public records. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Court agrees that Plaintiff's Complaint sufficiently references the incident report and investigative file, which are central to Plaintiff's claims. Thus, the Court shall refer to the incident report and investigative file, as well as the Bill of Information, which is a matter of public record.

The investigative file shows that on August 4, 2020, VPRAC received an anonymous call regarding loose dogs at a Youngsville address. According to the anonymous call, there were white and brown pit bull puppies roaming and owners who only came home every once in a while. (Rec. Doc. 91-3, p. 11). Upon Officer Bodin's arrival, he found that none of the dogs had food or water and that two dogs

were in wire crates covered in their own feces. (Rec. Doc. 91-3, p. 10). Pursuant to Garrot's instruction, he contacted VPSO, and Deputy Hargrave arrived on scene and was able to identify and contact the owner, Plaintiff.  Bodin took pictures of the dogs and scene (which appeared to be abandoned[2]) and seized eight dogs. (Rec. Doc. 91-3, p. 10-28). Deputy Hargrave's statement corroborates the investigative file and further notes confusion regarding whether seven or eight dogs were seized. (Rec. Doc. 91-4). Plaintiff's Complaint heavily relies on Deputy Hargrave's statements.

## Law and Analysis

### I.    Law Applicable to Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true,

---

[2]    Photographs show a mobile home surrounded by several abandoned vehicles, trash, and an overgrown yard. (Rec. Doc. 91-3, p. 16-28).

6

*Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556).  See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008).

## II.    State of Louisiana's Motion to Dismiss and the Vermilion Defendants' Motion to Strike.

Plaintiff asserts the following allegations regarding Louisiana:

80. Plaintiff alleges that the Louisiana Purchase treaty was not ratified.

81. Plaintiff further alleges that an unratified treaty is without force or effect.

82. In support of this allegation plaintiff produced a public records request to the United States Attorney General's Office from her attorney seeking among other documents the ratified Louisiana Purchase Treaty.

83. The United States' attorney General responded that the documents do not exist.

(Rec. Doc. 27).

Otherwise, the Complaint is devoid of any factual allegations regarding Louisiana's involvement in the alleged dog-seizing incident. Plaintiff's counsel has before made such bizarre contentions before the Court. *Moses v. Edwards*, No. 6:21-CV-00450, 2021 WL 1812190, at *1 (W.D. La. Mar. 31, 2021), *report and recommendation adopted in part*, No. 6:21-CV-00450, 2021 WL 1795166 (W.D. La. May 5, 2021), *appeal dismissed,* No. 21-30270, 2022 WL 1605233 (5th Cir. May 20, 2022); *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1006 (5th Cir. 2019) ("Atakapa I") (dismissing Plaintiff's "exotic claims" as "obviously without merit" and frivolous); and *Atakapa Indian de Creole Nation v. Edwards*, 838 F. App'x 124 (5th Cir. 2021) ("Atakapa II") (describing the suit as "similarly implausible" and frivolous).

Both this Court and the Fifth Circuit have previously sanctioned Plaintiff's counsel for such frivolous claims. The Fifth Circuit explicitly warned him against filing further frivolous claims:

> In 2019, Moses was sanctioned $2500 by the Western District of Louisiana; he has since been reminded of his obligation as an attorney not to advance frivolous litigation under Federal Rule of Civil Procedure 11 and Louisiana's Rules of Professional Conduct. In light of the apparent ineffectiveness of prior sanctions and warnings, we SANCTION Moses in the amount of $2500. We again remind him of his professional obligations, and we WARN him that filing or prosecuting frivolous litigation will result in additional sanctions.

*Moses v. Edwards*, No. 21-30270, 2022 WL 1605233, at *1 (5th Cir. May 20, 2022).

This Court will not waste time attempting to *again* address Plaintiff's allegations, seemingly of Mr. Moses' design. These claims are meritless and should be stricken from the Complaint as urged by the Vermilion Defendants.

Regardless of the absurdity of Plaintiff's counsel's position vis-à-vis jurisdiction, Louisiana enjoys sovereign immunity under the Eleventh Amendment and has not waived its immunity. La. R.S. 13:5106(A); *Raj v. Louisiana State Univ.*, 714 F.3d 322, 329 (5th Cir. 2013). Plaintiff's opposition to Louisiana's motion to dismiss rests on her claims against Vermilion Parish Sheriff Couvillon, which are discussed below. Plaintiff failed to overcome hornbook law that Louisiana is immune from her suit in federal court. Thus, Plaintiff's claims against Louisiana should be dismissed.

### III.   Sheriff Couvillon's Motion to Dismiss.

Plaintiff did not name Sheriff Couvillon as a defendant until her counsel filed the Amended Complaint on March 7, 2022. She contends that VPSO Deputy Hargrave was on the scene of the August 4, 2020 incident, that Sheriff Couvillon is

10

liable for Deputy Hargrave's actions, and that Sheriff Couvillon pressed charges against her for cruelty to animals.[3] (Rec. Doc. 27, ¶18-62; 105).

A. Whether Plaintiff's claims against Sheriff Couvillon are prescribed.

Sheriff Couvillon first contends Plaintiff's claims are prescribed. 42 U.S.C. §1983 does not contain a statute of limitations. Therefore, federal law looks to the applicable state law statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The court is to apply the state's statute of limitations applicable to personal injury actions. *Id.*, citing *Owens v. Okure,* 488 U.S. 235, 249–250 (1989), and *Wilson v. Garcia,* 471 U.S. 261, 279–280 (1985). In Louisiana, the prescriptive period for personal injury actions is one year. La. C.C. art. 3492. However, the accrual date for a §1983 cause of action is governed by federal law, rather than state law. *Wallace,* 549 U.S. at 388. "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint." *Top Dollar Pawn, Gun, & Car Audio No. 5, L.L.C. v. Shaw*, 626 F. App'x 475, 478 (5th Cir. 2015), citing *Helton v. Clements,* 832 F.2d 332, 334–35 (5th Cir.1987). "Put differently, the prescriptive period in a § 1983 action does not run until the

---

[3]    Under Louisiana law, the sheriff in his official capacity, rather than the department, is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff. *Burge v. Parish of St. Tammany,* 187 F.3d 452, 470 (5th Cir.1999); *Thomas v. Frederick,* 766 F.Supp. 540 (W.D.La.1991).

plaintiff is in possession of the critical facts that he has been hurt and the defendant is involved." *Top Dollar Pawn, supra* (cleaned up).

Plaintiff alleges that her dogs were seized on August 4, 2020, and that she was aware of such seizure on the same date. (Rec. Doc. 27, ¶18-36). She filed her original complaint exactly one year later on August 4, 2021; however, she did not name the Vermilion Parish Sheriff as a defendant. (Rec. Doc. 1). Indeed, her original complaint suggests she took no issue with the Sheriff, because her statement of claim provides: "Deborah Garrot and Tristan Bodin seized dogs and charged Tiffany with cruelty to animals over the advice of VPS Officer Lon Hargrave to issue warning." (Rec. Doc. 1, p. 2). She did not name Sheriff Couvillon as a defendant until she filed the Amended Complaint through counsel on March 7, 2022, more than one year later. (Rec. Doc. 27). Sheriff Couvillon was served on April 26, 2022 (Rec. Doc. 51-2).

Plaintiff's claims against Sheriff Couvillon are prescribed on the face of the Complaint unless the Amended Complaint relates back to the date of the originally filed Petition. Relation back of a pleading is governed by F.R.C.P. Rule 15(c)(1), which states:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

    (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

It is indisputable that the Amended Complaint asserts claims arising out of the same incident. "Rule 15(c) cannot be read to mean that any untimely cross-claim or pleading automatically relates back to the original complaint or answer merely because the later pleading arises from the same conduct, transactions and occurrences; otherwise, all cross-claims would be exempted from any time limitations because such claims must arise out of the same conduct, transactions, and occurrences in order to be asserted as cross-claims." *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1368, fn. 6 (5th Cir.1994). "Rather, there must be indication that the opposing party has been put on notice." *Id.*, citing 6A Charles A. Wright, et al., Federal Practice and Procedure § 1496 (1990) ("[T]he standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test; although not expressly mentioned in the rule,

the courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised in the amended pleading."). Therefore, even though the Complaint meets the transactional test of Rule 15(c)(1)(B), the Court must nevertheless determine, first, whether Louisiana law would allow the Amended Complaint to relate back under Rule 15(c)(1)(A), and second, whether Rule 15(c)(1)(C) applies to allow relation back.

  i. *Whether Louisiana law would allow the Amended Complaint to relate back.*

  Louisiana law allows the relation back of an amending petition if:

(1) The amended claim arises out of the same transaction or occurrence set forth in the original pleading;

(2) The purported substitute defendant has received such notice of the institution of the action that he will not be prejudiced in maintaining a defense on the merits;

(3) The purported substitute defendant knows or should know that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;

(4) The purported substitute defendant is not a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.

*Ray v. Alexandria Mall,* 434 So.2d 1083, 1087 (La.1983).

  The Louisiana Supreme Court has emphasized that prejudice to the newly named defendant is a significant consideration, such that the court must consider whether the new defendant had sufficient notice of the filing of the suit. *Findley v. City of Baton Rouge*, 570 So. 2d 1168, 1171 (La.1990). Further, "when there is an

identity of interest between the originally named defendant and the party the plaintiff actually intended to sue, the amendment may relate back, in the absence of prejudice, on the basis that institution of the action against one serves to provide notice of the litigation to the other. *Id.*, citing 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1499 (1990); 3 Moore's Federal Practice ¶ 15.08[5] (2d ed. 1989). "Sufficiency of the identity of interests depends upon the closeness of the relationship between the parties in their business operations and other activities." *Id.* The court may also consider whether one defendant operated any control over the other. *Savoie v. Calcasieu Par. Sheriff Office*, 2014-1133 (La. App. 3 Cir. 3/4/15), 157 So.3d 1278, 1283.

The Court finds that the amended complaint naming Sheriff Couvillon as a defendant did not provide sufficient notice that he or the department would be named as a defendant. In fact, the original complaint implies Plaintiff's belief that Sheriff Couvillon would be a favorable witness—not a defendant. Thus, the amended complaint does not relate back to the original complaint under Louisiana law.

> ii. *Whether Rule 15(c)(1)(C) would allow relation back.*

Since Plaintiff's Amended Complaint cannot relate back or otherwise survive prescription under Louisiana law, Plaintiff's claims against Sheriff Couvillon can only survive if Rule 15(c)(1)(C) applies. Relation back in this context applies if all four of the following factors are met:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading;

(2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense;

(3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it, and

(4) the added party had notice within now 90 days following the filing of the complaint, or longer if good cause is shown.[4]

*Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir.1998), citing *Skoczylas v. Federal Bureau of Prisons,* 961 F.2d 543, 545 (5th Cir.1992), and noting the effect of the 1991 amendment to Rule 15(c) in response to the factors enumerated by *Schiavone v. Fortune,* 477 U.S. 21, 29 (1986).

Rule 15, as amended, "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." *Id*., quoting *Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 469 (2d Cir.1995), *modified by* 74 F.3d 1366 (2d Cir.1996). The necessary elements for relation back under Rule 15(c)(1) are "notice" and "mistake." *Id*.

---

[4] The court in *Jacobsen* relied on the service rules under Rule 4(m) before it was amended in 2015 to change the period for service from 120 days to 90 days.

Notice can be inferred when there is an identity of interest between the original defendant and the newly named defendant, explained by the Fifth Circuit as follows:

> "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." In this regard, notice may be imputed to the new party through shared counsel.

*Id*., citing *Kirk v. Cronvich,* 629 F.2d 404, 407–08 (5th Cir.1980); *Barkins v. International Inns, Inc.,* 825 F.2d 905, 907 (5th Cir.1987); *Hendrix v. Memorial Hosp. of Galveston County,* 776 F.2d 1255, 1257–58 (5th Cir.1985).

The question of "mistake" under Rule 15(c)(1)(C)(ii) is not whether [plaintiff] knew or should have known the identity of [the defendant] as the proper defendant, but whether [the defendant] knew or should have known that it would have been named as a defendant but for an error. *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 548 (2010). "Failure to identify individual defendants cannot be characterized as a mistake." *Jacobsen*, 133 F.3d at 320, citing *Barrow*, 66 F.3d at 469.

The Amended Complaint does not change the name of Sheriff Couvillon or replace him or the Sheriff's Department as previously named defendants. Sheriff Couvillon is an entirely new defendant, sued in addition to original defendants, the Vermilion Defendants and previously dismissed Kaplan Defendants. In other words, the element of "mistake" is lacking, such that Rule 15(c)(1)(C) is not applicable.

17

Nevertheless, even under the Rule 15(c)(1)(C) analysis, the Amended Complaint would not relate back. The original complaint did not set forth any factual allegations against Sheriff Couvillon suggesting that he was in any way responsible for the incident, and Sheriff Couvillon had no reason to know, on the face of the original complaint, that he could be named as a defendant in this suit. Neither was Sheriff Couvillon sufficiently on notice in the original complaint that Plaintiff would attempt to bring claims against him as the employer of the allegedly involved deputy—a deputy which Plaintiff identified as a blameless non-party.

      B. <u>Whether Plaintiff stated a claim against Sheriff Couvillon.</u>

Prescription notwithstanding, Plaintiff's claims against Sheriff Couvillon do not withstand Rule 12(b)(6) scrutiny. To the extent Plaintiff attempts to assert claims against Sheriff Couvillon in his official capacity as the supervisor of the deputies allegedly involved in the incident or who allegedly pressed charges, such claims fail unless Plaintiff alleged facts sufficient show a failure to train or implementation of an official policy which is a moving force of the alleged constitutional violation. *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 286-89 (5th Cir. 2002). Plaintiff's allegations fall far below the threshold for stating such official capacity claims against Sheriff Couvillon. At best, Plaintiff's allegations show that the Vermilion Defendants were responsible for the charges against her, and that the Sheriff deputies were reluctant to process the charges. (Rec. Doc. 27, ¶53; 66-68;

142). Therefore, not only are Plaintiff's purported official capacity claims against Sheriff Couvillon prescribed, but her claims also fail under Rule 12(b)(6).

To the extent Plaintiff attempts to assert a malicious prosecution claim against Sheriff Couvillon, this claim likewise fails as a matter of law. In *Castellano v. Fragozo*, the Fifth Circuit held that "causing charges to be filed without probable cause will not without more violate the Constitution," such that "the assertion of malicious prosecution states no constitutional claim." *Castellano,* 352 F.3d at 953. However, claims pled as "malicious prosecution" do not automatically mandate dismissal. Rather, the court must consider whether the facts set forth a claim for constitutional violations pursuant to §1983, such as due process violations. See *Price v. City of San Antonio, Tex.*, 431 F.3d 890, 891 (5th Cir. 2005); *Boyd v. Driver*, 495 F. App'x 518, 522 (5th Cir. 2012). In this case, Plaintiff claims violations of the Fourth and Fourteenth Amendments for the unlawful search of her father's property and seizure of her dogs.

In order to state a claim under § 1983 for unlawful search and seizure, Plaintiff must allege facts sufficient to show the defendant carried out an unreasonable search and seizure. *RBIII, L.P. v. City of San Antonio*, 713 F.3d 840, 846 (5th Cir. 2013). Assuming without deciding that Plaintiff has standing to object to the reasonableness of the search of her deceased father's property, the Court finds that her allegations do not support a claim of unreasonableness against Sheriff Couvillon.

19

Plaintiff contends that the Sheriff's Office received a request from the Vermilion Defendants about abandoned dogs on the property, and that Deputy Hargrave thereafter assisted in locating and speaking with Tiffany as the person responsible for the dogs and property. (Rec. Doc. 27, ¶18-63). Law enforcement may lawfully enter private property pursuant to the public interest and may generally take any actions a private citizen might do, such as approaching a home and knocking on the front door. *Baker v. City of McKinney, Texas*, No. 4:21-CV-00176, 2022 WL 3704302, at *2 (E.D. Tex. Aug. 26, 2022), relying on *Cedar Point Nursery v. Hassid*, 210 L. Ed. 2d 369, 141 S. Ct. 2063, 2070 (2021); *Caniglia v. Strom*, 209 L. Ed. 2d 604, 141 S. Ct. 1596, 1599 (2021). Plaintiff's allegations do not show that any sheriff's deputy conducted an unreasonable search.

Plaintiff's claims for unlawful seizure against Sheriff Couvillon also fail, because her allegations show that the Vermilion Defendants—not any sheriff's deputy or Sheriff Couvillon—actually seized the dogs. Neither do the allegations show that Plaintiff herself was seized or arrested. Accordingly, Plaintiff's claims against Sheriff Couvillon should be dismissed as prescribed and/or for failure to state a claim under Rule 12(b)(6).

## IV.    Abbeville Defendants' Motion to Dismiss

Plaintiff did not name any of the Abbeville Defendants in her original complaint. (Rec. Doc. 1). She did not name the city, its mayor, or its council until

filing the amended complaint. For the same reasons Plaintiff's claims against Sheriff Couvillon are prescribed, her claims against the Abbeville Defendants should likewise be prescribed; however, the Abbeville Defendants did not raise a limitations defense.[5]

Rather, the Abbeville Defendants seek dismissal on the grounds that Plaintiff did not state a claim against them. Plaintiff's only allegations regarding the Abbeville Defendants are that 1) Abbeville is not actually a municipality (Rec. Doc. 27, ¶86-95); 2) that the Abbeville Defendants "knew or should have known about the policy or custom of unlawfully entering private property and illegally seizing personal property" (Rec. Doc. 27, ¶132); and 3) Abbeville Mayor Piazza "was aware of facts regarding a substantial risk of serious harm existing or a violation of constitution rights existed for illegally entering private property to seize animals and issuing unlawful criminal charges," based upon attached Council meeting minutes in which residents and council members discuss possible amendments to local ordinances to address animal issues in town. (Rec. Doc. 27, ¶139; Rec. Doc. 27-5). These allegations fail to state any claim against the Abbeville Defendants because they are 1) frivolous; 2) conclusory statements lacking supporting factual

---

[5]     *Sua sponte* dismissal of an ordinary civil case such as this is not appropriate where the defendant has not affirmatively pled a limitations defense. See *Lebouef v. Island Operating Co.,* 342 F. App'x 983, 984 (5th Cir. 2009); *Washington v. Friels*, No. CV 1:15-02400, 2016 WL 1306004, at *3 (W.D. La. Mar. 31, 2016).

allegations; and 3) do not show that any Abbeville Defendant was personally involved in the alleged seizure of Plaintiff's dogs or otherwise responsible for the seizure.

The passing of an allegedly unconstitutional or improper ordinance (if that is a basis of Plaintiff's claims) does not impose liability on the governing body, which enjoys absolute immunity. *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S. Ct. 966, 970, 140 L. Ed. 2d 79 (1998) ("[L]ocal legislators are … absolutely immune from suit under § 1983 for their legislative activities."). Thus, Plaintiff has failed to state any claim against the Abbeville Defendants, and these claims should be dismissed.

## V.   <u>Plaintiff's claims for punitive damages should be dismissed.</u>

Multiple defendants seek dismissal of Plaintiff's claims for punitive damages. The United States Supreme Court held unequivocally that "[a] municipality is immune from liability for punitive damages in a §1983 action." *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 270–71 (1981). See also *Howell v. Town of Ball*, No. 12-951, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012) (citing *Cook County, Ill. V. U.S. ex rel. Chandler*, 538 U.S. 119 (2003); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); and *Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984)). Furthermore, "[i]t is equally well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Howell v. Town of Ball*, 2012 WL 3962387, at *4 (citing *Monell v. New*

*York City Department of Social Services*, 436 U.S. 658 (1978)). On the other hand, punitive damages are recoverable against municipal employees who are sued in their individual capacities pursuant to a §1983 claim. *Smith v. Wade*, 461 U.S. 30, 35 (1983), and *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, Plaintiff's claims for punitive damages against the municipal defendants and individual defendants sued in their official capacities must be dismissed. To the extent Plaintiff asserts individual-capacity claims against Defendants Garrot, Bodin, and Landry, such claims may proceed if they otherwise survive dismissal.

Defendants have also moved to dismiss Plaintiff's claims for punitive damages under state law. Under Louisiana law punitive damages are not recoverable in civil cases absent a specific statutory provision authorizing recovery of punitive damages. *International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La.1988). In his Opposition to Defendants' motions, Plaintiff did not identify any potentially applicable statute. Rather, she (or her counsel) again relies upon the many-times-rejected-as-frivolous argument that this Court lacks jurisdiction, because she is a purported member of Mr. Moses's Atakapa tribe. Accordingly, the Court recommends granting of Defendants' motion to dismiss Plaintiff's claims for punitive damages under state law.

## VI.    <u>Vermilion Defendants' Motion to Dismiss.</u>

The Vermilion Defendants move to dismiss Plaintiff's § 1981, §1985, and § 1983 claims for violations of the Fourth and Fourteenth Amendments. They further seek dismissal based on qualified immunity of the individual defendants.

A. <u>Plaintiff's §§ 1981 and 1985 Claims</u>

Plaintiff asserts Defendants violated her rights under § 1981, because seizure of the dogs prevented her from making sales contracts for the puppies. The Fifth Circuit explained § 1981 claims as follows:

> Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). To establish a § 1981 claim for contractual discrimination, Plaintiffs must allege that (1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute—here, making a contract. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994). The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).
>
> *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 386 (5th Cir. 2017).

In addition to showing racial animus, the plaintiff "must establish the loss of an actual, not speculative or prospective, contract interest." *Morris v. Dillard Dep't Stores, Inc.,* 277 F.3d 743, 751 (5th Cir. 2001). Similarly, § 1985(3) claims require allegations of a race-based conspiracy or some racial animus.[6] *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001).

Although Plaintiff alleged she is a racial minority (Rec. Doc. 27, ¶1), she did not allege any facts showing her dogs were seized (and thus that her right to sell the puppies was violated) because of Defendants' discriminatory intent. (See Rec. Doc. 27, ¶¶96-99 in which Plaintiff alleges only that the dogs had pedigree papers and that Garrot "confiscated these valuable animals and disposed of them."). In other words, her allegations do not show that her dogs were seized *because* she is Black. On the contrary, the facts show that the dogs were confiscated after being reported as "roaming" and appearing to be somewhat abandoned. Hence, absent allegations showing racial animus or intent, the Court finds Plaintiff failed to state claims under § 1981 and § 1985. Additionally, Plaintiff's allegations do not show that she suffered an actual contract loss. Rather, she contends that "she could have made out sales

---

[6]     Although Plaintiff noted §1985 in her Complaint, she did not state a specific claim. Nonetheless, Vermilion Defendants seek to dismiss any such claim, should it exist. The Court assumes, based on the facts alleged, that any purported claim falls under§ 1985(3).

contracts for the puppies." (Rec. Doc. 27, ¶98). Her § 1981 claim also fails for this reason.

B. Plaintiff's § 1983 Claims.

Plaintiff's primary claims are pursuant to § 1983 for violations of the Fourth and Fourteenth Amendments. The Fourth Amendment protects against unreasonable searches and seizures. *United States v. Beaudion*, 979 F.3d 1092, 1094 (5th Cir. 2020). The Fourteenth Amendment protects an individual's substantive due process, procedural due process, and equal protection rights. The core concept underlying due process is protection from arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Absent governmental action which is "conscience shocking," a Fourteenth Amendment claim cannot survive. *Id*. Thus, in the context of this case, a claim which fails under the Fourth Amendment for lack of unreasonableness also fails under the Fourteenth Amendment. The Fifth Circuit standard of reasonableness is whether the conduct was objectively reasonable "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (cleaned up).

The Vermilion Defendants further maintain that regardless of whether Plaintiff sustained a constitutional injury, the individual defendants are protected by qualified immunity. The Fifth Circuit set forth the applicable law as follows:

> When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. To discharge this burden, a plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. To be clearly established' for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The central concept is that of fair warning: The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194–95 (5th Cir. 2009) (cleaned up).

The court need not consider whether a constitutional violation occurred under the first prong when the facts support a finding that the defendant's actions were objectively reasonable under the second prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Regardless of the context in which Plaintiff's claims are addressed, all analyses look to Defendants' reasonableness.

Plaintiff's Complaint, together with the facts in the investigative file, show that an anonymous caller complained about loose or abandoned dogs at what appeared to be an abandoned property. When VPRAC officer Bodin found several dogs without accessible food or water, his supervisor, Garrot, instructed that the dogs be seized and taken to the vet for checkup. (Rec. Doc91-3). Deputy Hargrave's

27

narrative corroborated that the dogs did not have accessible food or water and that some of the dogs were skinny. (Rec. Doc. 91-4, p. 1).

As previously discussed in reference to Sheriff Couvillon, law enforcement officers are justified in entering private property for purposes of public interest, as in this case, to check for abandoned or neglected animals, and may generally take any actions a private citizen might do, such as approaching a home and knocking on the front door. *Baker,* 22 WL 3704302, relying on *Cedar Point Nursery,* 141 S. Ct. 2063; *Caniglia,* 141 S. Ct. at 1599. Vermilion Defendants further rely on the following Vermilion Parish Ordinances in support of their reasonableness:

> Whenever a parish animal control officer has probable cause to believe that a violation of this article has occurred, the animal control officer may issue a warning or contact law enforcement to issue a summons and complaint to the violator, stating the nature of the violation with sufficient particularity to give notice of said charge to the violator. Animal control officers, along with law enforcement officers, shall enforce all of the provisions of this article as set forth herein and shall take up and impound any pet animal authorized to be impounded by parish ordinances and/or any provision of law.
>
> §6-23(b)
>
> Animal control officers are hereby authorized to enter upon any premises in the parish (excluding a dwelling), for the purpose of impounding pet animals which they are authorized herewith to impound, or for any other purpose authorized by this article or by law.
>
> §6-24
>
> In addition to the authority to issue warnings, summonses and citations in conjunction with local law enforcement (police department and/or sheriff), animal control officers are hereby further authorized to take or

capture pet animals deemed by them to be included in the categories listed below, and to impound them at a parish animal and rabies and control facility or other appropriate location where the animals will be confined in a humane manner. ...

(2) Pet animals at large, mistreated, or abused.

§6-120

Plaintiff's allegations and other facts considered do not show that the Vermilion Defendants were guilty of an unreasonable search or seizure of the dogs. The foregoing ordinances authorized Bodin's initial "search," after an anonymous complaint about roaming dogs (i.e. animals at large) whose "owners only come home every once in a while." (Rec. Doc. 91-3, p. 11). Garrot's instruction that the animals be seized and Bodin and Landry's seizure of the dogs were reasonable, in light of what was found: several dogs at an apparently abandoned property in filthy conditions, without accessible food or water, and some of which were noted as skinny. The fact that Plaintiff later explained that she was caring for the dogs and would do whatever necessary to prevent them from being seized does not render the seizure unreasonable. Accordingly, Plaintiff has failed to state a claim for violations of the Fourth or Fourteenth Amendments under § 1983.

C. Plaintiff's Supervisor and Municipal Liability Claims.

Plaintiff alleges that Garrot, as supervisor of VPRAC, is liable for her dogs' seizure by implementing an unconstitutional policy, and that the municipal defendants are otherwise liable for unconstitutional policies. (Rec. Doc. 27, ¶110-

139). Jurisprudence often refers to this as a *Monell* claim, as established by the Supreme Court in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, (1978). "[A] municipality, may not be held liable under § 1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), citing *Monell*, 436 U.S. at 691. Rather, a municipality may be liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*.

"All [] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). Because the Court finds that Plaintiff failed to state a claim for underlying constitutional violations, the Court finds that Plaintiff's *Monell* claims likewise fail as a matter of law.

Additionally, Plaintiff has failed to support her claims that the Vermilion Parish ordinances are unconstitutional. She did not state specific grounds for unconstitutionality. The Court gleans from the pleadings that Plaintiff challenges the ordinances as promulgated by a governmental entity without authority. The Louisiana Constitution empowers police juries, such as the Vermilion Parish police jury, to adopt ordinances which are "necessary, requisite, or proper for the

management of its affairs." La. Const. Ann. art. VI, § 7.[7] The Vermilion Parish police jury was justified in enacting ordinances aimed at managing abandoned animals for their own protection and protection of the community. Plaintiff failed to support any claim that the challenged ordinances are unconstitutional.

    D. <u>Plaintiff's Malicious Prosecution Claim.</u>

    As discussed above, Plaintiff does not have a free-standing right to assert a claim for malicious prosecution under federal law. In order to state a claim for malicious prosecution under state law, Plaintiff's facts must be sufficient to show the following elements:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.

*Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15), 168 So.3d 362, 367.

    Vermilion Defendants rely on Louisiana revised statute 14:102.1 in arguing that probable cause existed for Plaintiff's cruelty to animals charges. That statute criminalizes simple cruelty to animals as anyone "having charge, custody, or possession of any animal, either as owner or otherwise, unjustifiably fails to provide

---

[7]     In relying upon art. VI, § 7, the Vermilion Defendants imply that Vermilion Parish is not subject to a home rule charter, such that this provision applies. Plaintiff does not dispute this.

it with proper food, proper drink, proper shelter, or proper veterinary care" or anyone who "abandons any animal." The Court agrees the facts readily show probable cause for Plaintiff's charges, notwithstanding that the charges were later dismissed. Accordingly, Plaintiff failed to state a claim for malicious prosecution under state law.

## **Conclusion**

For the reasons discussed herein, the Court recommends that the following motions be GRANTED and that Plaintiff's claims be DISMISSED WITH PREJUDICE:

- Motion to Dismiss pursuant to Rule 12(b)(6) by State of Louisiana (Rec. Doc. 54)

- Motion to Dismiss pursuant to Rule 12(b)(6) by City of Abbeville, Mayor Mark Piazza, and the Abbeville City Council (Rec. Doc. 61)

- Motion to Dismiss pursuant to Rule 12(b)(6) by Michael Couvillon (Rec. Doc. 75)

- Motion to Dismiss Penalty, Punitive, or Exemplary Damages by Deborah Garrot, Tristan Bodin, Chase Landry, and the Vermilion Parish Police Jury (Rec. Doc. 89)

- Motion to Strike and Motion to Dismiss pursuant to Rule 129b)(6) by Deborah Garrot, Tristan Bodin, Chase Landry, and the Vermilion Parish Police Jury (Rec. Doc. 91)

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 22nd day of September, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE